**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF KENTUCKY**
**COVINGTON, KENTUCKY**
**CASE NO. 2:2008-CV-00215**

ROBERT FRENCH,                          :
                                        :
          Plaintiff,                    :    Judge David Bunning
                                        :
v.                                      :    **FILED ELECTRONICALLY**
                                        :
BP CHEMICALS INC., et al.               :
                                        :
          Defendants.                   :
                                        :

## DEFENDANTS' ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFF'S COMPLAINT

NOW COMES BP CHEMICALS INC., BP OIL PIPELINE COMPANY, BP AMERICA

INC., BP NORTH AMERICA INC., BP CORPORATION NORTH AMERICA, BP AMERICA

INC. RETIREMENT ACCUMULATION PLAN, BP NORTH AMERICA INC MASTER

HOURLY PLAN, BP RETIREMENT ACCUMULATION PLAN, BP AMERICA INC.

MASTER HOURLY PLAN, BP AMERICA RETIREMENT RESOURCE ACCOUNT, BP

AMOCO RETIREMENT ACCUMULATION PLAN, BP AMERICA SAVINGS AND

INVESTMENT PLAN, BP CAPITAL ACCUMULATION PLAN, BP AMERICA

RETIREMENT ACCUMULATION PLAN, BP AMERICA EMPLOYEE INVESTMENT

PLAN, BP AMERICA SAVINGS PLAN, BP EMPLOYEE SAVINGS PLAN, BP AMERICA

CAPITAL ACCUMULATION PLAN, BP DIRECT SAVE PLAN, BP AMOCO EMPLOYEE

SAVINGS PLAN, BP AMOCO DIRECT SAVE PLAN, BP AMOCO PARTNERSHIP

SAVINGS PLAN, and BP AMERICA DIRECT SAVE PLAN,[1] by and through their attorneys,

---

[1] Plaintiff has improperly named several defendants which are not legal entities. Out of an abundance of caution, Defendants are answering this complaint on behalf of the identified

Seyfarth Shaw LLP, and for their Answer and Affirmative and Other Defenses to Plaintiff's

Complaint, state as follows:

## NATURE OF THE ACTION

### COMPLAINT ¶ NO. 1:

Plaintiff brings this action against the plans and his employers for violations of ERISA under Section 502(c)(1)(B), 29 U.S.C. § 1132(c)(B), which provides damages to participants of up to $100.00 per day for an administrator's refusal to comply, within 30 days, with a written request for instruments under which a pension plan is established or operated.

### ANSWER:

Defendants admit that Plaintiff brings this action pursuant to Section 502(c)(1)(B) of

ERISA, 29 U.S.C. § 1132(c)(B).  Defendants deny the remaining allegations contained in

Complaint ¶ 1.

### COMPLAINT ¶ NO. 2:

Plaintiff brings this action for discharge and retaliation in violation of ERISA 29 U.S.C. §1140 (ERISA §510)

### ANSWER:

Defendants admit that Plaintiff brings this action pursuant to Section 510 of ERISA, 29

U.S.C. § 1140, but deny that they violated that statute.

### COMPLAINT ¶ NO. 3:

Plaintiff brings this action pursuant to a "Dismissal and Notice of Rights" issued by the U.S.  Equal Employment Opportunity Commission on August 20, 2008 for disability discrimination and retaliation in violation of 42 U.S.C. § 2000e et seq, hereinafter Title VII.

---

entities.  In doing so, Defendants no way waive any position regarding the appropriateness of this suit as it pertains to particularly named entities.

**ANSWER:**

Defendants admit the U.S. Equal Employment Opportunity Commission issued a

"Dismissal and Notice of Rights" to Plaintiff on or about August 20, 2008.  Defendants deny the

remaining allegations contained in Complaint ¶ 3.

**COMPLAINT ¶ NO. 4:**

Plaintiff brings this action for violations of K.R.S. 344.040 and K.R.S. 344.280.

**ANSWER:**

Defendants admit that Plaintiff brings this action pursuant to K.R.S. 344.040 and K.R.S.

344.280, but denies that they violated those statutes.

**JURISDICTION AND VENUE**

**COMPLAINT ¶ NO. 5:**

This Court has exclusive subject matter jurisdiction over this matter pursuant to Title VII
and ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2) under 28 U.S.C. § 1331 and 28 U.S.C.
§ 1343(a)(4), federal question jurisdiction.

**ANSWER:**

Defendants admit that the Court has subject matter jurisdiction over this matter.

Defendants deny the remaining allegations contained in Complaint ¶ 5.

**COMPLAINT ¶ NO. 6:**

Venue is proper, and this court has personal jurisdiction over the Defendants, pursuant to
ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2).  The Plan is administered in this district and one or
more of the Defendants reside or transact business in this district.  That pursuant to 28 U.S.C.
§ 1367, this court has pendent jurisdiction over claims based on KRS 344.040.

**ANSWER:**

Defendants admit that venue is proper in this district.  Defendants deny the remaining

allegations contained in Complaint ¶ 6.

## THE PARTIES

**A    Defendants**

**COMPLAINT ¶ NO. 7:**

Defendants, collectively referenced herein as BP, are or were business organizations either employing or providing employee benefits to Plaintiff.

**ANSWER:**

Defendants deny the allegations contained in Complaint ¶ 7.

**COMPLAINT ¶ NO. 8:**

Defendant plans are all employee pension benefit plans, as defined in ERISA § 3(2)(A), 29 U.S.C. § 1002(2)(A), and are currently or were previously maintained by the Company for eligible employees of the Company and its participating affiliates.

**ANSWER:**

Defendants deny the allegations contained in Complaint ¶ 8.

**COMPLAINT ¶ NO. 9:**

BP is a Plan sponsor within the meaning of ERISA § 3(16)(B), 29 U.S.C. §1002(16)(B) and the ultimate Plan administrator pursuant to ERISA § 3(16)(A), 29 U.S.C. § 1002(16)(A).

**ANSWER:**

Defendants deny the allegations contained in Complaint ¶ 9.

**COMPLAINT ¶ NO. 10:**

BP is a fiduciary of the Plan pursuant to ERISA § 3(21)(A), 29 U.S.C.§ 1002(21)(A) in that it has discretionary authority and control regarding the administration and management of the Plan and/or the Plan's assets.

**ANSWER:**

Defendants deny the allegations contained in Complaint ¶ 10.

**COMPLAINT ¶ NO. 11:**

BP is the plan sponsor of the BP Plans, within the meaning of meaning of ERISA § 3(16)(B), 29 U.S.C. § 1002(16)(B).  BP's Senior Vice President of Human Resources is a plan administrator, within the meaning of ERISA § 3(16)(A), 29 U.S.C. § 1002(16)(A), a plan

fiduciary within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), and a named fiduciary within the meaning of ERISA § 402(a)(1), 29 U.S.C. § 1102(a)(1).

**ANSWER:**

Defendants deny the allegations contained in Complaint ¶ 11.

### B.    Plaintiff

**COMPLAINT ¶ NO. 12:**

Plaintiff, Robert French, is a resident of Verona, Kentucky.

**ANSWER:**

Defendants lack knowledge or information sufficient to form a belief about the truth of

the allegations contained in Complaint ¶ 12, and therefore deny the same.

**COMPLAINT ¶ NO. 13:**

Upon information and belief, and upon reasonable investigation, in light of the limited information available, Plaintiff is, was or should have been a participant and/or beneficiary, within the meaning of ERISA § 3(7), (8), 29 U.S.C. § 1002(7), (8), in these Plans.

**ANSWER:**

Defendants deny the allegations contained in Complaint ¶ 13.

**COMPLAINT ¶ NO. 14:**

Plaintiff began his employment on March 28, 1988 with BP Chemicals Inc, formerly and also known as Vistron Corporation, Filon Silmar Company, Standard Oil Chemical Company, BP Chemicals America, Inc., Sohio Chemical Company, BP Chemicals Inc., a division of BP Corporation North America ("BP").

**ANSWER:**

Defendants admit that BP Chemicals America Inc. hired Plaintiff on or about March 28,

1988.  Defendants deny the remaining allegations contained in Complaint ¶ 14.

**COMPLAINT ¶ NO. 15:**

In 1991, BP Chemical's Filon Silmar plant, where Plaintiff was employed, shut down operations.  Plaintiff was subsequently laid off.

**ANSWER:**

Defendants deny the allegations contained in Complaint ¶ 15.

**COMPLAINT ¶ NO. 16:**

On January 27, 1992, less than one year after separating his employment with BP Chemical's Filon Silmar, Plaintiff began working for BP Oil Pipeline Company, formerly and also known as Sohio Pipleline[sic] Company.

**ANSWER:**

Defendants admit that on or about January 27, 1992, Plaintiff was transferred to BP Oil

Pipeline Co.  Defendants deny the remaining allegations contained in Complaint ¶ 16.

**COMPLAINT ¶ NO. 17:**

In June 1996 Plaintiff was relocated to Canton, Ohio as a Pipeline Operator.

**ANSWER:**

Defendants admit the allegations contained in Complaint ¶ 17.

**COMPLAINT ¶ NO. 18:**

In 1998 Plaintiff was relocated to the Cincinnati area as a Pipeline Operator.

**ANSWER:**

Defendants admit the allegations contained  in Complaint ¶ 18.

**COMPLAINT ¶ NO. 19:**

In January 2006, BP sent Plaintiff for a medical evaluation based on complaints that *"people have been concerned about him repeating things without remembering that he has already said something."* Plaintiff was not deemed unfit for duty and returned to work.

**ANSWER:**

Defendants admit that in January 2006 Plaintiff was sent for a medical evaluation.

Defendants deny the remaining allegations contained in Complaint ¶ 19.

**COMPLAINT ¶ NO. 20:**

On March 29, 2006, BP notified Plaintiff he would be evaluated at Drake Medical Center ("Drake").

**ANSWER:**

Defendants admit in or about March 2006 Plaintiff was advised that he should go to a medical evaluation at Drake Medical Center. Defendants deny the remaining allegations contained in Complaint ¶ 20.

**COMPLAINT ¶ NO. 21:**

In early April 2006, while on vacation, Plaintiff was told he could not return to work until he was seen at Drake for an evaluation.

**ANSWER:**

Defendants admit that in or about April 2006 Plaintiff was advised that he needed to undergo a medical evaluation before returning to work. Defendants deny the remaining allegations contained in Complaint ¶ 21.

**COMPLAINT ¶ NO. 22:**

Plaintiff was evaluated at Drake in April and May 2006.

**ANSWER:**

Based on information and belief, Defendants admit the allegations contained in Complaint ¶ 22.

**COMPLAINT ¶ NO. 23:**

On June 9th, 2006 Drake notified BP Plaintiff was not "presently fit for duty."

**ANSWER:**

Defendants admit that on or about June 6, 2006, Drake Medical Center issued a report stating that Plaintiff was "not presently fit for duty." Defendants deny the remaining allegations contained in Complaint ¶ 23.

**COMPLAINT ¶ NO. 24:**

On September 22, 2006 Plaintiff's doctor asked BP to re-evaluate Plaintiff for fitness to return to work as his treatment was complete.

**ANSWER:**

Defendants deny the allegations contained in Complaint ¶ 24.

**COMPLAINT ¶ NO. 25:**

On September 27, 2006, BP's agreed to schedule a re-evaluation.

**ANSWER:**

Defendants admit that Plaintiff was evaluated again after September 2006.  Defendants

deny the remaining allegations contained in Complaint ¶ 25.

**COMPLAINT ¶ NO. 26:**

Between April 12, 2006 and September 27, 2006, Plaintiff continued to receive regular

pay.

**ANSWER:**

Defendants deny the allegations contained in Complaint ¶ 26.

**COMPLAINT ¶ NO. 27:**

After receiving notice that Plaintiff wanted to return to work, BP retroactively assessed

Plaintiff's pay as "short term disability" thereby exhausting all of Plaintiff's available STD

benefits: 22 weeks of STD at full pay and 4 weeks at ½ pay, plus an additional 4 weeks at 50%

pay (lifetime benefits).  To exhaust all this time, BP STD time for days in 2005 that

were not missed by Plaintiff and for the time BP forced Plaintiff to take off between April and

June 2006, before BP received a medical opinion that Plaintiff was "unable to work."

**ANSWER:**

Defendants deny the allegations contained in Complaint ¶ 27.

**COMPLAINT ¶ NO. 28:**

Plaintiff received his last paycheck on November 13, 2006.

**ANSWER:**

Defendants deny the allegations contained in Complaint ¶ 28.

**COMPLAINT ¶ NO. 29:**

BP refused to schedule Plaintiff's re-evaluation until his "supervisor approved it" so on October 12, 2006 Plaintiff scheduled his own re-evaluation appointment for re-evaluation on December 1, 2006.

**ANSWER:**

Defendants deny the allegations contained in Complaint ¶ 29.

**COMPLAINT ¶ NO. 30:**

BP denied Plaintiff's request to return to work pending re-evaluation and ignored his phone calls.

**ANSWER:**

Defendants deny the allegations contained in Complaint ¶ 30.

**COMPLAINT ¶ NO. 31:**

On November 9, 2006, Plaintiff applied for unemployment benefits which he received based on BP's representation of a "mutual separation."

**ANSWER:**

Defendants lack knowledge or information sufficient to form a belief about the truth of

the allegations contained in Complaint ¶ 31, and therefore deny the same.

**COMPLAINT ¶ NO. 32:**

On November 29, 2006, Plaintiff's appointment was cancelled and rescheduled for December 22, 2006.

**ANSWER:**

Defendants lack knowledge or information sufficient to form a belief about the truth of

the allegations contained in Complaint ¶ 32, and therefore deny the same.

**COMPLAINT ¶ NO. 33:**

On December 22, 2006, Plaintiff was evaluated and released to return to work with initial supervision with expectations that he could perform routine duties which were familiar to him with more novel tasks proving more challenging.

**ANSWER:**

Defendants deny the allegations contained in Complaint ¶ 33.

**COMPLAINT ¶ NO. 34:**

BP continued to deny Plaintiff's requests to return to work and on January 4, 2007, Plaintiff's Supervisor said BP was "questioning the issue of his supervision and wanted more information from Drake."

**ANSWER:**

Defendants deny the allegations contained in Complaint ¶ 34.

**COMPLAINT ¶ NO. 35:**

On January 4, 2006, BP asked Drake to "clarify the opinion that Mr. French could return to work" and to state "whether Mr. French could return to work without restrictions and to identify any restrictions."

**ANSWER:**

Defendants deny the allegations contained in Complaint ¶ 35.

**COMPLAINT ¶ NO. 36:**

From January 4, 2007 to January 19, 2007 BP ignored Plaintiff's repeated requests to return to work and did not return his phone calls.

**ANSWER:**

Defendants deny the allegations contained in Complaint ¶ 36.

**COMPLAINT ¶ NO. 37:**

On January 25, 2007, Plaintiff contacted the EEOC requesting information on how to file a Charge of Discrimination.

**ANSWER:**

Defendants lack knowledge or information sufficient to form a belief about the truth of

the allegations contained in Complaint ¶ 37, and therefore deny the same.

**COMPLAINT ¶ NO. 38:**

On February 9, 2007, Drake told BP Plaintiff's only restriction on returning to work was supervision "for a few days to determine if residual deficits interfere with job performance."

**ANSWER:**

Defendants deny the allegations contained in Complaint ¶ 38.

**COMPLAINT ¶ NO. 39:**

BP continued to refuse Plaintiff to return to work.

**ANSWER:**

Defendants deny the allegations contained in Complaint ¶ 39.

**COMPLAINT ¶ NO. 40:**

Subsequently Plaintiff contacted the EEOC and reported he was being denied the opportunity to return to work.

**ANSWER:**

Defendants lack knowledge or information sufficient to form a belief about the truth of

the allegations contained in Complaint ¶ 40, and therefore deny the same.

**COMPLAINT ¶ NO. 41:**

Subsequently Plaintiff was told by the EEOC that BP would return him to work soon and received a phone call that day from BP's Medical Coordinator telling him he could return to work after he saw BP's "company doctor."

**ANSWER:**

Defendants lack knowledge or information sufficient to form a belief about the truth of

the allegations contained in Complaint ¶ 41, and therefore deny the same.

**COMPLAINT ¶ NO. 42:**

BP did not schedule an appointment with the "company doctor" until March 22, 2007.

**ANSWER:**

Defendants deny the allegations contained in Complaint ¶ No. 42.

**COMPLAINT ¶ NO. 43:**

On April 3, 2007, CIGNA, BP's Long Term Disability Carrier, sent Plaintiff an application for long term disability benefits, asked him to sign the application and provide additional information.

**ANSWER:**

Defendants lack knowledge or information sufficient to form a belief about the truth of

the allegations contained in Complaint ¶ 43, and therefore deny the same.

**COMPLAINT ¶ NO. 44:**

Plaintiff never applied for long term disability.

**ANSWER:**

Defendants lack knowledge or information sufficient to form a belief about the truth of

the allegations contained in Complaint ¶ 44, and therefore deny the same.

**COMPLAINT ¶ NO. 45:**

Under the BP Retirement Accumulation Plan (RAP), monthly contributions were made to a current and opening account. The Current Account earned interest and BP made monthly contributions called a "pay credit" based on Plaintiff's eligible pay. LTD benefits are not eligible pay.

**ANSWER:**

Defendants deny the allegations contained in Complaint ¶ 45.

**COMPLAINT ¶ NO. 46:**

After BP retroactively exhausted Plaintiff's STD benefits Plaintiff was not placed on a Medical Leave of Absence which would have allowed him to receive contributions to his RAP based on his eligibility prior to the leave of absence.

**ANSWER:**

Defendants deny the allegations contained in Complaint ¶ 46.

**COMPLAINT ¶ NO. 47:**

Contributions to the RAP increase based on a participants age and years of service. On February 5, 2007, Plaintiff became eligible for increased contributions.

**ANSWER:**

Defendants deny the allegations contained in Complaint ¶ 47.

**COMPLAINT ¶ NO. 48:**

On April 9, 2007, BP's "company doctor" supported Drake's opinion that Plaintiff should be returned to work with supervision for evaluation of his performance.

**ANSWER:**

Defendants deny the allegations contained in Complaint ¶ 48.

**COMPLAINT ¶ NO. 49:**

On April 13, 2007 and April 23, 2007, Plaintiff asked to return to work with the doctors' suggested accommodations but his requests were denied.

**ANSWER:**

Defendants lack knowledge or information sufficient to form a belief about the truth of

the allegations contained in Complaint ¶ 49, and therefore deny the same.

**COMPLAINT ¶ NO. 50:**

On May 1, 2007 CIGNA contacted Plaintiff requesting he complete the application for LTD benefits.

**ANSWER:**

Defendants lack knowledge or information sufficient to form a belief about the truth of

the allegations contained in Complaint ¶ 50, and therefore deny the same.

**COMPLAINT ¶ NO. 51:**

On May 2, 2007 Plaintiff notified BP he had not applied for LTD and wanted to return to work.

**ANSWER:**

Defendants deny the allegations contained in Complaint ¶ 51.

**COMPLAINT ¶ NO. 52:**

On May 4, 2007, Plaintiff accessed his pension information from the website of Fidelity Investments, the Administrator, and received the message "we are unable to estimate your pension benefits at this time." Plaintiff's status with the Administrator for the RAP was listed as "inactive, LOA/Strike as of March 31, 2006," the last day Plaintiff worked before being forced off work.

**ANSWER:**

Defendants lack knowledge or information sufficient to form a belief about the truth of

the allegations contained in Complaint ¶ 52, and therefore deny the same.

**COMPLAINT ¶ NO. 53:**

On May 7, 2007 Plaintiff requested plan documents for BP's long term disability plan
and the RAP.

**ANSWER:**

Defendants deny the allegations contained in Complaint ¶ 53.

**COMPLAINT ¶ NO. 54:**

On May 9, 2007 CIGNA at BP's behest, requested additional information on Plaintiff's
"long term disability claim."

**ANSWER:**

Defendants deny the allegations contained in Complaint ¶ 54.

**COMPLAINT ¶ NO. 55:**

On May 9, 2007 Plaintiff notified CIGNA he had not applied for LTD and CIGNA
should stop contacting his medical providers for information.

**ANSWER:**

Defendants lack knowledge or information sufficient to form a belief about the truth of

the allegations contained in Complaint ¶ 55, and therefore deny the same.

**COMPLAINT ¶ NO. 56:**

On May 11, 2007 CIGNA refused to stop processing Plaintiff's "application for benefits"
unless Plaintiff's counsel sent "a letter of correspondence."

**ANSWER:**

Defendants lack knowledge or information sufficient to form a belief about the truth of

the allegations contained in Complaint ¶ 56, and therefore deny the same.

**COMPLAINT ¶ NO. 57:**

CIGNA continued to contact Mr. French's doctors, many of whom were not listed on the "application."

**ANSWER:**

Defendants lack knowledge or information sufficient to form a belief about the truth of

the allegations contained in Complaint ¶ 57, and therefore deny the same.

**COMPLAINT ¶ NO. 58:**

On May 16, 2007, Plaintiff's counsel instructed CIGNA to stop contacting Plaintiff's medical providers, many of whom were not listed on the "application" submitted on Plaintiff's behalf.

**ANSWER:**

Defendants lack knowledge or information sufficient to form a belief about the truth of

the allegations contained in Complaint ¶ 58, and therefore deny the same.

**COMPLAINT ¶ NO. 59:**

On May 23, 2007, Plaintiff requested information relative to his employment status, the LOA/Strike classification, and notified BP pension contributions were not being made to his account.

**ANSWER:**

Defendants deny the allegations contained in Complaint ¶ 59.

**COMPLAINT ¶ NO. 60:**

On May 24, 2007, BP indicated Plaintiff's status was "medical leave of absence, effective April 12, 2006.

**ANSWER:**

Defendants admit that Plaintiff's status was "medical leave of absence, effective April 12,

2006." Defendants deny the remaining allegations contained in Complaint ¶ 60.

**COMPLAINT ¶ NO. 61:**

On May 30, 2007 CIGNA notified Plaintiff it was "unable to approve" his application for long term disability benefits.

**ANSWER:**

Defendants lack knowledge or information sufficient to form a belief about the truth of

the allegations contained in Complaint ¶ 61, and therefore deny the same.

**COMPLAINT ¶ NO. 62:**

On June 8, 2007, in spite of the doctor's opinions that Plaintiff could "perform satisfactorily any routine duties which are quite familiar to him" but "more complex novel tasks" might be challenging, BP offered Plaintiff a "non-operations role" and indicated he had to be able to demonstrate his ability to perform a new job before he would be allowed to try his Operator job.

**ANSWER:**

Defendants deny the allegations contained in Complaint ¶ 62.

**COMPLAINT ¶ NO. 63:**

On June 8, 2007 Plaintiff requested information as to any grandfathered benefits to which he was entitled and asked whether he had any early retirement options.

**ANSWER:**

Defendants deny the allegations contained in Complaint ¶ 63.

**COMPLAINT ¶ NO. 64:**

As of June 11, 2007, Plaintiff's "final vested balance" in his RAP, according to Fidelity's website, was $76,405.51, the same balance as of March 31, 2006, Plaintiff's last day of work before being forced on STD.  Plaintiff's balance, including BP's contributions, should have been $86,305.19 as of April 30, 2007.

**ANSWER:**

Defendants lack knowledge or information sufficient to form a belief about the truth of

the allegations contained in Complaint ¶ 64, and therefore deny the same.

**COMPLAINT ¶ NO. 65:**

Plaintiff's pension statements after April 2006 did not contain information about his RAP benefits.

**ANSWER:**

Defendants lack knowledge or information sufficient to form a belief about the truth of

the allegations contained in Complaint ¶ 65, and therefore deny the same.

**COMPLAINT ¶ NO. 66:**

On July 11, 2007, BP advised Plaintiff its HRIS system did not show information about
any grandfathered benefits and Plaintiff should contact Fidelity.

**ANSWER:**

Defendants deny the allegations contained in Complaint ¶ 66.

**COMPLAINT ¶ NO. 67:**

On July 13, 2007, Fidelity advised Plaintiff BP had the information on his grandfathered
benefits but BP would not provide the requested information.

**ANSWER:**

Defendants lack knowledge or information sufficient to form a belief about the truth of

the allegations contained in Complaint ¶ 67, and therefore deny the same.

**COMPLAINT ¶ NO. 68:**

On July 16, 2007 BP advised Plaintiff if he didn't accept the alternative position and
return to work by the end of the week his employment would be terminated.

**ANSWER:**

Defendants deny the allegations contained in Complaint ¶ 68.

**COMPLAINT ¶ NO. 69:**

On July 18, 2007, Plaintiff advised BP (a) he was unable to get information on Plaintiff's
retirement plan from Fidelity; (b) Fidelity said he was ineligible for the Capital Accumulation
plan (CAP) but Plaintiff possessed a statement showing a vested balance in this plan of
$19,691.04 as of June 30, 1999.

**ANSWER:**

Defendants deny the allegations contained in Complaint ¶ 69.

**COMPLAINT ¶ NO. 70:**

On July 18, 2007 Plaintiff again requested BP provide information on Plaintiff's status as a grandfathered participant and advised Plaintiff could not accept the new position without knowing what impact it might have on his benefits.

**ANSWER:**

Defendants deny the allegations contained in Complaint ¶ 70.

**COMPLAINT ¶ NO. 71:**

On July 18, 2007 Plaintiff requested copies of the pre-1989 RAP plan documents and amendments and a copy of the "pre-2000" plan with amendments.

**ANSWER:**

Defendants deny the allegations contained in Complaint ¶ 71.

**COMPLAINT ¶ NO. 72:**

On July 22, 2007, Plaintiff again requested information on his employment status including dates of employment, gaps, and the specific location for each date of employment.

**ANSWER:**

Defendants deny the allegations contained in Complaint ¶ 72.

**COMPLAINT ¶ NO. 73:**

On August 16, 2007, Plaintiff requested, from the Administrator, Fidelity Investments, copies of all applicable plans, prior plan, summary plan descriptions, and amendments.

**ANSWER:**

Defendants lack knowledge or information sufficient to form a belief about the truth of

the allegations contained in Complaint ¶ 73, and therefore deny the same.

**COMPLAINT ¶ NO. 74:**

On August 16, 2007, BP indicated that it had outsourced most of its benefit administration and "transferred to the employee himself/herself prime responsibility for tracking down answers to benefits issues." BP suggested Plaintiff began his employment with BP Chemicals Filon on March 28, 1988 and *transferred* to BP Pipelines on January 27, 1992 and "based on this information, it *appears* Mr. French is a Heritage BP, not Amoco, employee."

**ANSWER:**

Defendants deny the allegations contained in Complaint ¶ 74.

**COMPLAINT ¶ NO. 75:**

On August 16, 2007, BP set a "firm deadline" that unless Plaintiff returned to work in the alternative position by August 27, 2007 his employment would be terminated.

**ANSWER:**

Defendants admit that on or about August 16, 2007 Plaintiff was told that unless he

returned to work by August 27, 2007 to the position offered, his employment would be

terminated.  Defendants deny the remaining allegations contained in Complaint ¶ 75.

**COMPLAINT ¶ NO. 76:**

On August 17, 2008 BP indicated Plaintiff was ineligible for a traditional final average pay benefit.

**ANSWER:**

Defendants deny the allegations contained in Complaint ¶ 76.

**COMPLAINT ¶ NO. 77:**

On August 19, 2007, Plaintiff requested an accounting of Plaintiff's monies in the CAP plan and requested confirmation to substantiate BP's claim that Plaintiff's vested funds were in the Employee Savings Plan.  Plaintiff also requested copies of the following plans: Standard Oil Company Savings and Investment Plan (SIP), Sohio Contributory Retirement Plan, BP America Master Hourly Plan for Represented Employees, BP America Savings and Investment Plan, BP American Capital Accumulation Plan, BP America Retirement Plan, and BP America Capital Accumulation Plan, (CAP), Amoco Employee Savings Plan (AESP), BP Amoco Employee Savings Plan, BP Amoco Direct Save Plan, BP Amoco Partnership Savings Plan, Employee Retirement Plan of Amoco and participating companies, BP America Retirement Accumulation Plan, BP Amoco Retirement Accumulation Plan, and BP Retirement Accumulation Plan.

**ANSWER:**

Defendants admit that on or about August 19, 2007, Plaintiff requested the following

documents: Standard Oil Company Savings and Investment Plan (SIP), Sohio Contributory

Retirement Plan, BP America Master Hourly Plan for Represented Employees, BP America

Savings and Investment Plan, BP American Capital Accumulation Plan, BP America Retirement

Plan, and BP America Capital Accumulation Plan, (CAP), Amoco Employee Savings Plan

(AESP), BP Amoco Employee Savings Plan, BP Amoco Direct Save Plan, BP Amoco

Partnership Savings Plan, Employee Retirement Plan of Amoco and participating companies, BP

America Retirement Accumulation Plan, BP Amoco Retirement Accumulation Plan, and BP

Retirement Accumulation Plan.  Defendants deny the remaining allegations contained in

Complaint ¶ 77.

**COMPLAINT ¶ NO. 78:**

On August 24, 2007, Plaintiff indicated he would not return to work by August 27th and
reiterated his request for copies of plan documents and all other information relative to his rights
to pension, retirement or deferred compensation benefits.

**ANSWER:**

Defendants deny the allegations contained in Complaint ¶ 78.

**COMPLAINT ¶ NO. 79:**

On August 27, 2007, BP terminated Plaintiff's employment.

**ANSWER:**

Defendants admit that Plaintiff's employment with BP Pipelines (North America) Inc.

was terminated on August 27, 2007.  Defendants deny the remaining allegations contained in

Complaint ¶ 79.

**COMPLAINT ¶ NO. 80:**

On August 31, 2007 BP partially responded to Plaintiff's document requests and
contradicted the prior representation of Plaintiff's initial employer claiming he was hired as a
"Sohio Pipelines (later known as BP Pipelines) employee."

**ANSWER:**

Defendants deny the allegations contained in Complaint ¶ 80.

**COMPLAINT ¶ NO. 81:**

On September 4, 2007 Plaintiff demanded all applicable defined benefit documents
related to hourly employees at the Filon/Silmar plan [sic] from 1988 to the present including but

not limited to: the RAP plan and amendments and restatements, the pre-1988 Master Hourly Plan and any amendments, restatements, or mergers, the BP Amoco Employee Savings Plan, renamed Amoco Employee Savings Plan, the BP Amoco Direct Save Plan and the BP Amoco Partnership Savings Plan.

**ANSWER:**

Defendants deny the allegations contained in Complaint ¶ 81.

**COMPLAINT ¶ NO. 82:**

On September 4, 2007 Plaintiff demanded an accounting of his status as an employee from March 1988 to the present including but not limited to:

(1) All dates of employment
(2) Any dates listed as inactive, on a leave of absence, on strike, or any other classification relative to the accumulation of benefits under the aforementioned plans.
(3) All severance dates

**ANSWER:**

Defendants admit that Plaintiff requested the information listed in items 1 - 3 in

Complaint ¶ 82 on or about September 4, 2007.  Defendants deny the remaining allegations

contained in Complaint ¶ 82.

**COMPLAINT ¶ NO. 83:**

On September 4, 2007, Plaintiff requested an accounting of all transactions relative to any plan under which Plaintiff participated from March 1988 to the present.

**ANSWER:**

Defendants deny the allegations contained in Complaint ¶ 83.

**COMPLAINT ¶ NO. 84:**

On September 11, 2007 the Plan Administrator responded, on BP letterhead, to Plaintiff's request for statements.  No information was produced with regard to any grandfathered benefits which Plaintiff would have received prior to Fidelity taking over as the record keeper for the plans in 1999.

**ANSWER:**

Defendants admit that on or about September 11, 2007, the Plan Administrator's

designate responded to Plaintiff's inquiry. Defendants deny the remaining allegations contained

in Complaint ¶ 84.

**COMPLAINT ¶ NO. 85:**

On September 12, 2007 Fidelity produced a packet of information with a worksheet
providing information "on the benefits which will continue during your *retirement* beginning on
August 27, 2007."

**ANSWER:**

Defendants lack knowledge or information sufficient to form a belief about the truth of

the allegations contained in Complaint ¶ 85, and therefore deny the same.

**COMPLAINT ¶ NO. 86:**

On September 12, 2007, Plaintiff sent another request to Fidelity requesting an
accounting of all monies contributed by BP into any plan on Plaintiff's behalf between March
1988 and the present.

**ANSWER:**

Defendants lack knowledge or information sufficient to form a belief about the truth of

the allegations contained in Complaint ¶ 86, and therefore deny the same.

**COMPLAINT ¶ NO. 87:**

On September 21, 2007 Plaintiff forwarded all prior requests for Plan Documents to the
BP ERISA Claims and Appeals Coordinator.

**ANSWER:**

Defendants deny the allegations contained in Complaint ¶ 87.

**COMPLAINT ¶ NO. 88:**

On October 11, 2007 the ERISA Claims Coordinator indicated she had inquired to
Fidelity about the defined plan benefit calculations referenced in Fidelity's September 11, 2000
letter.

**ANSWER:**

Defendants admit the allegations contained in Complaint ¶ 88.

**COMPLAINT ¶ NO. 89:**

On October 30, 2007, the ERISA Claims administrator indicated there were no relevant plan document requests outstanding.  BP denied Plaintiff participated in the Master Hourly Plan and refused to provide the plan documents.

**ANSWER:**

Defendants deny the allegations contained in Complaint ¶ 89.

**COMPLAINT ¶ NO. 90:**

On November 1, 2007, Plaintiff again reiterated the request for an accounting of all monies contributed to any account on Plaintiff's behalf since 1988 and for the Master Hourly Plan documents noting the plain language of Supplement XI to the RAP plan specifically referenced "Filon Silmar" employees:

**SUPPLEMENT XI**

**Special Provisions Applicable to
Employees of the Filon Silmar-Fort Wright, Kentucky**

**Supplement XI of the Pre-2000 Plan provided special provisions applicable to Participants who were hourly paid employees of the Filon Silmar division of BP Chemicals, located at Fort Wright, Kentucky, prior to its sale.**

**All Supplement XI Participants ceased benefit accruals under the Plan prior to July 1, 2000 and no Participant shall accrue a benefit under this Supplement XI after such date.  The benefits payable to such Participants who were eligible for Supplement XI under the Pre-2000 Plan shall be determined in accordance with and shall be subject to the terms of the Prior Plan assuming such Participant terminated employment on the earlier of (i) his actual Severance Date, or (ii) September 30, 1993 (for Silmar), or October 15, 1993 (for Filon), as appropriate.**

**ANSWER:**

Defendants deny the allegations contained in Complaint ¶ No. 90.

**COMPLAINT ¶ NO. 91:**

On November 6, 2007 Plaintiff reiterated the request for the Master Hourly Plan.

**ANSWER:**

Defendants deny the allegations contained in Complaint ¶ 91.

**COMPLAINT ¶ NO. 92:**

On November 27, 2007 the ERISA Coordinator indicated the request for outstanding plan documents had been forwarded to the legal department.

**ANSWER:**

Defendants deny the allegations contained in Complaint ¶ 92.

**COMPLAINT ¶ NO. 93:**

On December 17, 2007, the ERISA Claims Coordinator produced only Appendix FF from the Master Hourly Plan effective January 1, 1990 and Supplement XI from the 1994 RAP claiming Plaintiff was not a participant in the Master Hourly Plan because he wasn't a union employee but suggesting "even if he was covered his assets were not adversely affected by the transfer to the BP Retirement Accumulation Plan."

**ANSWER:**

Defendants admit the allegations contained in Complaint ¶ 93.

**COMPLAINT ¶ NO. 94:**

On December 26, 2007 Plaintiff notified BP's ERISA Coordinator that Appendix FF to the Master Hourly Plan applied to hourly as well as union employees at one time and was entitled "Appendix FF for **hourly rated employees of BP America, Inc., Fort Wright, Kentucky"** Plaintiff notified BP Supplement XI referenced several other Appendices and provisions of the prior plan which were not provided. Plaintiff reiterated his request for:

**(1)    All Master Hourly Plan Documents, amendments, mergers, and restatements. Including but not limited to: the pre-1988 Master Hourly Plan as well as the January 1, 1988 restatement and merger, the January 1, 2001 amendment and restatement, the December 31, 2002 merger into the RAP.**

**(2)    An accounting of all monies contributed by Plaintiff, BP America, BP Chemicals, BP Plc, or BP Amoco into any plan at any time between March 1988 and the present;**

**(3)    An accounting of Plaintiff's status as an employee from March 1988 to the present including but not limited to:**

**(a)    All dates of employment;**

    **(b)**      **Any dates listed as inactive, on a leave of absence, on strike, or any other classification relative to the accumulation of benefits under the aforementioned plans;**

    **(c)**      **All severance dates"**

**ANSWER:**

Defendants admit that on or about December 26, 2007, Plaintiff requested the documents and information identified in parts 1 - 3 of Complaint ¶ 94.  Defendants deny the remaining allegations contained in Complaint ¶ 94.

**COMPLAINT ¶ NO. 95:**

On January 11, 2008, the ERISA Claims Coordinator indicated the document requests were still being reviewed.

**ANSWER:**

Defendants deny the allegations contained in Complaint ¶ 95.

**COMPLAINT ¶ NO. 96:**

On January 28, 2008 Plaintiff again reiterated the request for all[sic] **_all_** Plan Documents set forth above.

**ANSWER:**

Defendants deny the allegations contained in Complaint ¶ 96.

**COMPLAINT ¶ NO. 97:**

On February 4, 2008, the ERISA Claims Coordinator indicated the Master Hourly Plan would not be produced, Plaintiff's requests for information relative to Plaintiff's employment history had been referred to BP's legal department, and that Plaintiff should provide copies of his statements to BP which demonstrated inaccurate benefits calculations.

**ANSWER:**

Defendants admit the allegations contained in Complaint ¶ 97.

**COMPLAINT ¶ NO. 98:**

On February 4, 2008, Plaintiff again requested the outstanding documents.

**ANSWER:**

Defendants deny the allegations contained in Complaint ¶ 98.

**COMPLAINT ¶ NO. 99:**

To date, Plaintiff has not been provided with:

**(a)      Master Hourly Plan Documents, amendments, mergers, and restatements. Including but not limited to: the pre-1988 Master Hourly Plan as well as the January 1, 1988 restatement and merger, the January 1, 2001 amendment and restatement, the December 31, 2002 merger into the RAP.**

**(b)      An accounting of Plaintiff's status as an employee from March 1988 to the present including but not limited to:**

**(i)      All dates of employment;**

**(ii)     Any dates listed as inactive, on a leave of absence, on strike, or any other classification relative to the accumulation of benefits under the aforementioned plans;**

**(iii)    All severance dates"**

**(c)      BP Partnership Savings Plan and the BP DirectSave Plan.  BP admits Plaintiff participated/participates in CAP.  The Sohio Employee Investment Plan (SIP) was established October 1, 1952.  In 1992, it was spun off SIP and renamed CAP.  On April 7, 2000 BP CAP merged into BP Amoco Employee Savings Plan and was renamed Amoco Employee Savings Plan.  Assets of AESP and BP Cap were transferred into BP Amoco Direct Save Plan and BP Amoco Partnership Savings Plan.**

**(d)      An accounting of all monies contributed by Plaintiff, BP America, BP Chemicals, BP Plc, or BP Amoco into any of the above listed plans at any time between March 1988 and the present;**

**ANSWER:**

Defendants deny the allegations contained in Complaint ¶ 99.

**COUNT I**
**INTERFERENCE WITH A PROTECTED RIGHT UNDER THE**
**EMPLOYEE RETIREMENT INCOME SECURITIES ACT**
**29 U.S.C. §1140 (ERISA §510)**

**COMPLAINT ¶ NO. 100:**

Plaintiff reiterates paragraphs 1-99 as though stated herein.

**ANSWER:**

Defendants restate and reallege their answers to Complaint ¶¶ 1-99 as set forth above.

**COMPLAINT ¶ NO. 101:**

Plaintiff is an employee, participant and beneficiary for purposes of 29 U.S.C. § 1002(6).

**ANSWER:**

Defendants deny the allegations in Complaint ¶ 101.

**COMPLAINT ¶ NO. 102:**

Defendants are persons and/or employers for purposes of 29 U.S.C. § 1002(5).

**ANSWER:**

Defendants deny the allegations in Complaint ¶ 102.

**COMPLAINT ¶ NO. 103:**

Defendants terminated Plaintiff's employment with a specific intent to interfere with Plaintiff's health, pension, life, and other welfare benefits.

**ANSWER:**

Defendants deny the allegations in Complaint ¶ 103.

**COMPLAINT ¶ NO. 104:**

Plaintiff was denied a Medical Leave of Absence which would have afforded him 24 months of continuing employment, without pay, but he would have continued to accrue credited service and vacation benefits and contributions would have continued to be made to his pension account based on his eligible pay in effect immediately before he took the leave of absence.

**ANSWER:**

Defendants deny the allegations in Complaint ¶ 104.

**COMPLAINT ¶ NO. 105:**

Plaintiff's short term disability benefits were retroactively assessed to him back to April 2007 causing his eligibility for short term benefits to exhaust in October 2007.

**ANSWER:**

Defendants deny the allegations contained in Complaint ¶ 105.

**COMPLAINT ¶ NO. 106:**

Defendant attempted to coerce Plaintiff into applying for long term disability benefits as this would cut off Defendants obligation to make contributions to Plaintiff's pension.

**ANSWER:**

Defendants deny the allegations in Complaint ¶ 106.

**COMPLAINT ¶ NO. 107:**

Defendants actions violate 29 U.S.C. § 1140, which prohibits any person from discriminating against a participant or beneficiary for exercising any right to which she was entitled under her employee benefit plans or for the purpose of interfering with the attainment of any right under a plan or under ERISA.

**ANSWER:**

Defendants deny the allegations in Complaint ¶ 107.

**COMPLAINT ¶ NO. 108:**

Defendants actions violate 29 U.S.C. § 1140, which prohibits any person from terminating a participant or beneficiary for exercising any right to which she was entitled under her employee benefit plans or for the purpose of interfering with the attainment of any right under a plan or under ERISA.

**ANSWER:**

Defendants deny the allegations in Complaint ¶ 108.

**COMPLAINT ¶ NO. 109:**

That Plaintiff's action is properly brought pursuant to 29 U.S.C. § 1132 to enforce substantive rights.

**ANSWER:**

Defendants deny the allegations in Complaint ¶ 109.

**COUNT II**
**REFUSAL TO PROVIDE INFORMATION REQUIRED TO BE DISCLOSED WITHIN 30 DAYS PURSUANT TO 29 USC §1132(c)**

**COMPLAINT ¶ NO. 110:**

Plaintiff reiterates paragraphs 1-109 as though set forth herein.

**ANSWER:**

Defendants restate and reallege their answers to Complaint ¶¶ 1-109 as set forth above.

**COMPLAINT ¶ NO. 111:**

Plaintiff, through counsel, requested information relative to Plaintiff's employee benefits.

**ANSWER:**

Defendants admit the allegations in Complaint ¶ 111.

**COMPLAINT ¶ NO. 112:**

Plaintiff has repeatedly asked for all plan documents and plan documents, including the Master Hourly Plan, which he participated in at least for some period of time.

**ANSWER:**

Defendants deny the allegations in Complaint ¶ 112.

**COMPLAINT ¶ NO. 113:**

While producing certain of the BP Plan documents, Defendants refused to produce documents requested and referenced in paragraph 101.

**ANSWER:**

Defendants deny the allegations in Complaint ¶ 113.

**COMPLAINT ¶ NO. 114:**

Consequently, Plaintiff has been required to file this suit in order to obtain documents he is entitled to receive which has caused Plaintiff unnecessary delay and frustration.

**ANSWER:**

Defendants deny the allegations in Complaint ¶ 114.

**COMPLAINT ¶ NO. 115:**

By refusing to produce all of the BP Plan documents referenced in paragraph 114, BP violated ERISA Sections 104(b)(4) and 109(c), 29 U.S.C. §§ 1024(b)(4) and 1029(c). *See also* 29 C.F.R. § 2560.503-1(h)(2).

**ANSWER:**

Defendants deny the allegations in Complaint ¶ 115.

**COMPLAINT ¶ NO. 116:**

Accordingly, under ERISA Section 502(c)(1), 29 U.S.C. § 1132(c)(1), BP is liable to Plaintiff in an amount up to $100 per day for refusing to produce these documents between August 19, 2007 and present.

**ANSWER:**

Defendants deny the allegations in Complaint ¶ 116.

## COUNT III TITLE VII

**COMPLAINT ¶ NO. 117:**

Plaintiff incorporates as though stated herein Paragraphs 1-116.

**ANSWER:**

Defendants restate and reallege their answers to Complaint ¶¶ 1-116 as set forth above.

**COMPLAINT ¶ NO. 118:**

Plaintiff had a disability as defined by the Americans with Disabilities Act, 42 U.S.C. § 12102(2), as he had a record of having a physical or mental impairment that substantially limits one or more of the major life activities of such individual and was regarded as having such an impairment.

**ANSWER:**

Defendants deny the allegations in Complaint ¶ 118.

**COMPLAINT ¶ NO. 119:**

Defendant relied upon Plaintiff's record of having such a disability in making its decision not to accommodate Plaintiff and in the decision to terminate Plaintiff.

**ANSWER:**

Defendants deny the allegations in Complaint ¶ 119.

**COMPLAINT ¶ NO. 120:**

Defendants cannot establish that Plaintiff's requested accommodation presented an undue hardship as it was only a request that Plaintiff be supervised for a couple of days.

**ANSWER:**

Defendants deny the allegations in Complaint ¶ 120.

**COMPLAINT ¶ NO. 121:**

In light the nature and cost of the accommodation, the financial resources of Defendant, the number of persons employed by Defendant, and the type of Defendant's business, Plaintiff's request did not present significant difficulty or expense to Defendant to comply.

**ANSWER:**

Defendants deny the allegations in Complaint ¶ 121.

**COMPLAINT ¶ NO. 122:**

Defendants' actions violated the Americans with Disabilities Act.

**ANSWER:**

Defendants deny the allegations in Complaint ¶ 122.

**COMPLAINT ¶ NO. 123:**

Plaintiff filed a Charge and received a Right to Sue Letter dated August 20, 2008 and has exhausted his administrative remedies.

**ANSWER:**

Defendants admit Plaintiff filed a charge of discrimination with the Equal Employment

Opportunity Commission ("EEOC") and that the EEOC sent him a Dismissal and Notice of

Rights on or about August 20, 2008.  Defendants deny the remaining allegations contained in

Complaint ¶ 123.

**COUNT IV**
**DISABILITY DISCRIMINATION**
**PURSUANT TO K.R.S. 344.040**

**COMPLAINT ¶ NO. 124:**

Plaintiff incorporates as though set forth herein Paragraphs 1-123.

**ANSWER:**

Defendants restate and reallege their answers to Complaint ¶¶ 1-123 as set forth above.

**COMPLAINT ¶ NO. 125:**

Plaintiff is a qualified individual with a disability as defined by K.R.S. 344.010 and 344.040.

**ANSWER:**

Defendants deny the allegations in Complaint ¶ 125.

**COMPLAINT ¶ NO. 126:**

Defendants are employers as defined by K.R.S. 344.010.

**ANSWER:**

Defendants deny the allegations in Complaint ¶ 126.

**COMPLAINT ¶ NO. 127:**

Defendants regarded Plaintiff as having a physical impairment which limits one or more of her major life activities and therefore regarded him as disabled.

**ANSWER:**

Defendants deny the allegations in Complaint ¶ 127.

**COMPLAINT ¶ NO. 128:**

Defendants have taken adverse actions against Plaintiff by refusing to accommodate his disability and terminating his employment.

**ANSWER:**

Defendants deny the allegations in Complaint ¶ 128.

**COMPLAINT ¶ NO. 129:**

Defendants actions in refusing to accommodate Plaintiff's disability and return him to work deprives him of compensations, terms, and privileges of employment on the basis of her disability and such actions violate K.R.S. 344.040.

**ANSWER:**

Defendants deny the allegations in Complaint ¶ 129.

## COUNT V
## VIOLATIONS OF K.R.S. 344.280

### COMPLAINT ¶ NO. 130:

Plaintiff incorporates as though set forth herein Paragraphs 1-129.

### ANSWER:

Defendants restate and reallege their answers to Complaint ¶¶ 1-129 as set forth above.

### COMPLAINT ¶ NO. 131:

Defendants are persons and employers as defined by K.R.S. 344.280 and thus subject to suit under the Act.

### ANSWER:

Defendants deny the allegations in Complaint ¶ 131.

### COMPLAINT ¶ NO. 132:

Plaintiff opposed practices declared unlawful by this chapter.

### ANSWER:

Defendants deny the allegations in Complaint ¶ 132.

### COMPLAINT ¶ NO. 133:

Defendants retaliated and discriminated against Plaintiff because he opposed practices declared unlawful under K.R.S. 344.040.

### ANSWER:

Defendants deny the allegations in Complaint ¶ 133.

### COMPLAINT ¶ NO. 134:

Plaintiff has suffered damages as a result of Defendants' actions.

### ANSWER:

Defendants deny the allegations in Complaint ¶ 134.

## <u>AFFIRMATIVE AND OTHER DEFENSES</u>

1.    Plaintiff's claims are barred to the extent that they exceed the scope of his EEOC charge.

2.    To the extent Plaintiff failed to mitigate his damages, he is barred from recovery.

3.    To the extent Plaintiff is requesting relief in the form of punitive damages, those claims are barred by Defendants' good-faith efforts to comply with all applicable anti-discrimination laws.

4.    Plaintiff failed to exhaust his administrative remedies.

5.    Certain Defendants are not properly named and lack a capacity to be sued.

6.    Plaintiff's claims are barred by the applicable statute of limitations.

**DATED:  March 19, 2009**                    Respectfully submitted,

/s/ Amanda A. Sonneborn
Ian H. Morrison (imorrison@seyfarth.com)
Amanda A. Sonneborn
(asonneborn@seyfarth.com)
Seyfarth Shaw LLP
131 S. Dearborn St., Suite 2400
Chicago, Illinois 60603
(312) 460-5000 (telephone)
(312) 460-7000 (facsimile)

Wm. T. Robinson III, Esq.
(wrobinson@fbtlaw.com)
Stephen M. Gracey, Esq. (sgracey@fbtlaw.com)
Frost Brown Todd LLC
7310 Turfway Road, Suite 210
Florence, Kentucky 41042
859-817-5900 (telephone)
859-283-5902 (facsimile)

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 19, 2009, I electronically filed the foregoing using the CM/ECF system, which will send notification of such filing to counsel of record.

/s/ Amanda A. Sonneborn
Amanda A. Sonneborn